# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**

      Plaintiff,               Case No. 22-CR20392

                                   Hon. Sean F. Cox

v.

**ROSE COOK,**

      Defendant.

_____/

| | |
|---|---|
| DAVID M. BURGESS (P58557) | CORINNE LAMBERT |
| Attorney for Defendant | Assistant U.S. Attorney |
| 1360 Porter Street, Suite 260 | 211 W. Fort Street, Suite 2001 |
| Dearborn, MI 48124 | Detroit, Michigan 48226 |
| (313) 961-4382 | (313) 226-9129 |
| David29_1999@yahoo.com | corinne.lambert@usdoj.gov |

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Rose Cook pled guilty to Count One Theft of Government Funds pursuant to 18 U.S.C. §641.  As a result, he is scheduled for sentencing on January 28, 2022. The presentence investigation report provides for guidelines with a Total Offense Level of 10 and a Criminal History Category of I.   This creates a total advisory guideline range of imprisonment from 6 to 12 months. The Defendant does not quarrel with this calculation.

After the Supreme Court's decision in United States v Booker, 125 S.Ct. 738 (2005), and its progeny,  the  lower  courts  seem  to  suggest  that  the

1

following methodology be used in determining what sentence should be imposed in a particular case. The court should first determine the applicable advisory guideline range. The court must then determine whether any departures from the advisory guideline range apply. Lastly, the court must then consider the factors set forth in 18 U.S.C. 3553(a) in arriving at an appropriate sentence. As the Sixth Circuit has said, once the guideline range is calculated, The district court throws this ingredient into the section 3553(a) mix, considering, as <u>Booker</u> requires, the minimally sufficient mandate and other factors relevant to the case. <u>United States</u> v <u>McBride</u>, 434 F.3d 470, 476 (6th Cir. 2006). See also, <u>Gall</u> v <u>United States</u>, 128 S.Ct 586 (2007).

<u>U.S.C. §3553(a) FACTORS</u>

Post-<u>Booker</u>, the district court's mandate at sentencing is to impose "a sentence sufficient, but not greater than necessary to comply with the purposes of §3553(a)". <u>United States</u> v. <u>Collington</u>, 461 F3d 805 (6th Cir. 2006). Further, it is the responsibility of the court to fulfill "the core mission of the <u>Booker</u> remedial opinion by ensuring that it is exercising independent judgment in sentencing criminal defendants within statutory limits." <u>United States</u> v. <u>Buchanan</u>, 449 F3d 731, 740 (Sutton concurring) (6th Cir. 2006). In carrying out this responsibility, the Court must calculate the advisory

2

guideline range and then "[throw] this ingredient into Section 3553(a) mix."
United States v. McBride, 434 F3d 470, 476 (6th Cir. 2006).

According to the court in Collington, the §3553(a) (2) factors to be considered include "the seriousness of the offense, deterrence of future crimes, protection of the public from future crimes of the defendant, and providing the defendant with needed training or correctional treatment." Id at p 807. 18 U.S.C. §3553(a) requires this Court to consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed –

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant

        (D)    to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; and

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for –

        (A)    the applicable category of offense committed by the

3

applicable category of defendant as set forth in the
guidelines.

(6)          the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of similar
conduct. <u>Booker</u> directs courts to consider all of the §3553(a) factors, many
of which the guidelines either reject or ignore. For example, under
§3553(a)(1), a sentencing court must consider the "history and
characteristics of the defendant". However, under the guidelines, courts are
generally forbidden to consider many of the factors that relate to a person's
history and character. See U.S.S.G. §5H1.1 - 5H1.12. Prohibiting
consideration of these factors cannot be squared with the §3553(a)(1)
requirement that the court evaluate the "history and characteristics" of the
defendant. Thus, in cases in which a person's history and character are
positive, consideration of all these factors might call for a sentence outside
the usual guideline range.

In <u>United States</u> v. <u>Grossman</u>, 513 F3d 592 (6th Cir. 2008), the
Sixth Circuit affirmed the lower court's substantial downward variance. The
District Court faced with a guideline range of 135-168 months varied
downward and imposed a sentence of 66 months custody. In making such a
variance, the sentencing court found that the recommended guideline sentence

"was not reflective of what [the defendant] did." The court weighed the other §3553(a) factors and concluded that they also supported the variance. The Sixth Circuit, in upholding the variance, found it procedurally    and substantively reasonable. In doing so, Judge Sutton, writing for the Court, observed that *the District Court had considered both the guidelines and the §3553(a) factors, and then based its decision on rationally based, individualized considerations.* (Emphasis added). The district court can also make independent assessments to justify an individualized sentence determination.  In Rita v United States , 127 SCt 2456, 2458, the Supreme Court held that the district courts can conclude that the guideline sentence fails to reflect 18 U.S.C. §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless."

Booker breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the §3553(a) factors to  the criminal defendants that come before them. If there is a pattern that emerges from *Rita, Gall* and *Kimbrough*, it is that the district court judges were vindicated in all three cases, and a court of appeals was affirmed just once-and that of course was when it deferred to the on-the-scene judgment of the district court.  *United States v Vonner,* 516 F.3d 382, 392 (6th Cir.) (en banc), *cert.*

*denied*, U.S.  , 129 S.Ct.68,     L.Ed.2d    (2008).

Variances are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. Many courts have held that district judges need not shrink from utilizing variances when the opportunity presents itself and when the circumstances require such action to bring about a fair and reasonable sentence. Sentencing is a difficult art and it is easy to make it mechanical. However, what it should be is an act of reason by the Judge looking at a particular person and the circumstances of the crime this person has committed and then making a judgment. United States v. Dominquez, 296 F3d 192, 196 n.7 (3rd Cir. 2002) ("The Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom".); United States v. Meyers, 353 F. Supp.  2d 1026, 1027 (S.D. Iowa 2005) "if the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."; United States v. Biheiri 356 F. Supp. 2d 589 (E.D. Va. 2005) "fashioning a just sentence cannot be reduced to a mere arithmetical exercise and that reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produce an illusory precision that obscures the fact that sentencing in the end, must involve the exercise of judgment". (Emphasis added).

The fundamental rule for federal sentencing is that it shall result in "a sentence sufficient but not greater than necessary, to comply" with the requirements of   the §3553(a) factors.  18 U.S.C. §3553 (a)(2).

In this case, Ms. Cook, through her counsel, respectfully suggests that the following factors should be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing in this case.

HISTORY AND CHARACTERISTICS OF MS. COOK

Ms. Cook is a sixty-six-year-old woman.  She resides with her husband Terry Cook who she has been married to since 2004.  She has several children that are aware of her situation and support her during this matter.  She also has many grandchildren who she babysits multiple times a week and continues to be a positive influence in their lives.

She had a terrible childhood, and was abused physically and sexually. She had a baby by her father when she was 14.  She was told that the baby died, but she suspects foul play by her parents to prevent others from finding out about the incest.

She has both physical and mental health issues that are laid out in the presentence report.  She does currently address these issues with medication and counseling.

7

Ms. Cook has been on release since her initial appearance in court and has had no bond violations whatsoever. She has reported as directed and complied with all of the conditions set by the court. She has been under court supervision for almost one year which clearly demonstrates her ability to comply with court orders.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Ms. Cook did not accurately report to the Social Security Administration that she and her husband were living together because she was afraid that she would lose her benefits. The total amount that was overpaid to Ms. Cook was $74,872.58 over a ten-year period. She is more than willing to enter into a repayment arrangement if this Court allows her to pay restitution while serving a non-custodial sentence.

INCARCERATION WILL HAVE HARSH EFFECT ON INNOCENT FAMILYMEMBERS

Section 5H1.6 of the United States Sentencing Guidelines allows the Court to apply a downward variance from the sentencing guidelines when innocent family members will suffer hardships from the incarceration of a Defendant. In this case, Ms. Cook plays a big role in the life of her children and grandchildren. She has supported them physically, mentally,

emotionally and continues to help out her children by babysitting her grandchildren multiple times per week.. If the Court incarcerates Ms. Cook for any period of time, there will be a detrimental effect to all of her children and grandchildren.   In <u>United States v. Galante</u>, 111 F.3d 1029 (2d Cir. 1997) a district court's 13 level downward departure was affirmed in a drug case where the Defendant showed he was a conscientious and caring father of two young boys who would have faced severe financial hardships if the Defendant was incarcerated. Thus, Ms. Cook should enjoy the same consideration and be given a non-custodial sentence with any terms and conditions the Court deems appropriate.

<u>SERIOUSNESS OF THE OFFENSE, RESPECT FOR LAW AND JUST PUNISHMENT</u>

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Thus, the seriousness of the offense may be lessened, for example, if the crime was not violent. See 28 U.S.C. § 994(j). A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law  and provides unjust punishment. In August of 2003 Justice Anthony Kennedy gave a  speech at the ABA Annual Meeting in San Francisco where he stated:

Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms… [and they] should be revised downward.

On February 14, 2007 Justice Kennedy again addressed this issue when he testified before the Senate Judiciary Committee and stated:

Our sentences are too long, our sentences are too severe; our sentences too harsh... there is no compassion in the system.  There's no mercy in the system.

In <u>United States</u> v <u>Bannister</u>, 786 F. Supp.2nd 617 (E.D.N.Y.2011) the court addressed the length of the prison sentences in the United Sates:

The increased prison population is due in large part to longer sentences. For the same crimes, American prisoners receive sentences twice as long as English prisoners, three times as long as Canadian prisoners, four times as long as Dutch prisoners, 5 to 10 times as long as French prisoners, and five times as long as Swedish prisoners. Yet these countries' rates of violent crime are lower than ours, and their rates of property crime are comparable.

A reasonable and fair sentence, along with a broad array of restrictions and a lifetime of collateral consequences, reflects the seriousness of the offense promotes respect for the law and provides just punishment. *See* 18 U.S.C. §3553(a)(2)(A). A host of other penalties and burdens always attend criminal conviction, to name a few:  losses of family life, of socioeconomic

status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with a conviction.

## DETERRENCE TO CRIMINAL CONDUCT

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." There is no evidence that increases in sentence length reduces crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A review of Research 28-29 (2006).

## PROTECTION OF THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Section § 3553(a)(2)(C) requires the Court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose has to do with both the defendant's risk of recidivism and the danger posed by the defendant, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983). It is not so important for first offenders, for those with limited criminal histories, for those who have little

risk of recidivism, or for those who have a strong potential for rehabilitation.

The likelihood that a defendant will engage in future criminal conduct is a central factor that district courts must assess when imposing a sentence. Ms. Cook made a bad decision that resulted in her being involved in this case. Ms. Cook has the tools to be a useful and productive member of society and should be allowed to continue to do so in the community where she resides.

## KINDS OF SENTENCES AVAILABLE

Courts must now consider all of the "kinds of sentences available" by statute, Section § 3553(a)(3), even if the kinds of sentence . . . established [by] the guidelines" permit or encourage only prison.   *See* Gall v United States, supra at 602 & n.11 (2007).

Congress expected that the threshold question in most cases would continue to be whether prison was necessary.  It instructed judges as follows:

> The court, in determining *whether* to impose a term of imprisonment, and, *if* a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment *is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (Emphasis added).

It directed the Commission to "ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders

who pose the most dangerous threat to society" while permitting "*increased*

use of restitution, community service, and other alternative sentences" in all

other cases. *See* Pub. L. 98-473 §239, 98 Stat. 1987, 2039 (1984)

(emphases added). Congress identified when some term of imprisonment

should be imposed, and encouraged the use of non-prison alternatives in

between. *See* 28 U.S.C. § 994(j).

Even if you commit a non-violent offense, a person could very well

face a life sentence of sorts because the stigma of a felony conviction will

follow that person for the rest of his or her life. United States v Smith, 683

F.2d 1236, 1240 (9th Cir. 1982).

"The stigma of a felony conviction is permanent and pervasive."

Most states bar many felons from working in a wide variety of jobs and

professions, severely restricting employment opportunities. The stigma of a

felony conviction is both permanent and pervasive. "A felony conviction

irreparably damages one's reputation." United States v Wulff, 758 F.2d

1121, 1125 (6th Cir. 1985).

In this case, Ms. Cook does not need to be incarcerated for this Court to

fashion a fair and reasonable sentence that comports with the 3553(a) factors

listed above. Ms. Cook has had the time to reflect on her actions and has

started to implement a plan to move forward as a law abiding member of

society.  She is respectfully asking the Court for a non-custodial with any

other conditions this Court deems appropriate.

Respectfully submitted,

/s/ David M. Burgess
DAVID M. BURGESS (P58557)
1360 Porter Street, Suite 260
Dearborn, MI 48124
(313) 961-4382
E-mail: david29_1999@yahoo.com

Dated: June 28, 2023

14

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**

     Plaintiff,                 Case No. 22-CR20392
                                   Hon. Sean F. Cox

v.

**ROSE COOK,**

     Defendant.

_____/

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN) ) ss
COUNTY OF WAYNE )

     I hereby certify that on June 28, 2023, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court using the ECF system.

                            /s/David M. Burgess
                            DAVID M. BURGESS